UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MORTGAGE CONTRACTING
SERVICES, LLC,

    Plaintiff,

v.                                                Case No: 8:17-cv-1566-T-36CPT

J & S PROPERTY SERVICES LLC,

    Defendant.
_____/

## **O R D E R**

This matter comes before the Court upon Defendant J&S Property Services, LLC's ("J&S" or "Defendant") Motion to Dismiss (Doc. 6). Plaintiff Mortgage Contracting Services, LLC ("MCS" or "Plaintiff") filed a Response to Motion to Dismiss (Doc. 16) and, subsequently, an Amended Response to Motion to Dismiss (Doc. 23). For the reasons that follow, the Court will grant in part and deny in part the Motion to Dismiss.

    **I.    STATEMENT OF FACTS**[1]

MCS is in the business of providing property preservation, inspection, and maintenance services to companies in the financial services industry. Doc. 2, ¶ 4. MCS and J&S entered into an agreement, titled the Mortgage Field Services Agreement (the "Agreement"),[2] whereby J&S agreed to perform certain work assignments, including "preservation and inspection services", as

---

[1] The following statement of facts is derived from MCS' Complaint (Doc. 2) and attached exhibits, the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero,* 963 F. 2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.,* 711 F. 2d 989, 994 (11th Cir. 1983).
[2] The Agreement is "entered into effective as of 1/1/14", yet the Complaint includes events alleged to have occurred as early as December 2, 2013. *See* Doc. 2, Exh. 1; Doc. 2, ¶¶ 9-13. If an earlier contract existed between MCS and J&S, it is not attached to the Complaint.

directed by MCS, for the benefit of MCS' clients. Doc. 2, Exh. 1, ¶ 1. The Agreement further provided that J&S would defend, indemnify, and hold harmless MCS from "any and all losses, damages, [or] liabilities" from "any act, omission, or negligence by Contractor [J&S]". Doc. 2, ¶ 18; Doc. 2, Exh. 1.

In late 2013, non-party Nation Star Banking ("Nation Star"), a client of MCS, began foreclosure proceedings on a condominium unit ("Unit 6") in the Oxford Commons Condominium in York, Pennsylvania. Doc. 2, ¶ 9; Doc. 2, Exh. 2, ¶¶ 2, 36. After verifying that the property was vacant and the utilities were turned off, MCS directed J&S to perform an "initial secure" on Unit 6 by changing the locks and "winterizing" the property to ensure the safety of the utilities during the winter climate. Doc. 2, ¶¶ 10-11. J&S traveled to Unit 6 on December 6, 2013 but did not perform the initial secure because it determined Unit 6 was occupied and that the utilities were turned on. Doc. 2, ¶¶ 11-12. J&S apparently made this determination "per [the] mail carrier." Doc. 2, ¶ 12. MCS directed J&S to return to Unit 6 to confirm the occupancy status. Doc. 2, ¶ 13. Upon returning to Unit 6 on December 28, 2013, J&S determined the unit was vacant and the utilities were turned off. Doc. 2, ¶ 13. MCS directed J&S to return to conduct the initial secure, and J&S returned to Unit 6 on January 7, 2014 to perform the work. Doc. 2, ¶ 14. J&S' work order report explained that J&S changed the locks, installed a lock box, and completed a partial winterization. Doc. 2, ¶ 14. J&S did not complete the full winterization, explaining in the work order report: "system is frozen, water heater did not drain, drain in sink frozen, water in toilet is frozen." Doc. 2, ¶ 14. On January 8, 2014, the pipes in Unit 6 froze and burst, causing water damage to Unit 6 and to an additional condominium unit (the "loss"). Doc. 2, ¶ 15.

On March 4, 2016, non-party Millers Mutual Group ("Millers") brought suit in Pennsylvania state court (the "Underlying Lawsuit") as subrogee of non-party Oxford Commons

2

Condominium Association (the "Association"), which Millers insured. Doc. 2, Exh. 2. The Underlying Lawsuit included two counts against MCS: one for negligence and one for breach of contract. Doc. 2, Exh. 2. In pertinent part, the Underlying Lawsuit alleged MCS breached its duties to the Association when it failed to perform winterization work or failed to do so in a workmanlike manner and when it failed to inform the Association and Nation Star of the lack of heat in Unit 6. Doc. 2, Exh. 2, ¶ 30. The Underlying Lawsuit further alleged MCS breached its contract with Nation Star by failing to winterize Unit 6 or failing to do so in a workmanlike manner. Doc. 2, Exh. 2, ¶ 36. The Underlying Lawsuit alleged Millers paid $88,564.46 to remediate and repair the damage to the two units, including Unit 6. Doc. 2, Exh. 2, ¶¶ 31, 37. Millers sought that amount, plus costs of suit, delay, and pre- and post-judgment interest against MCS. Exh. 2, ¶¶ 31, 37.

Upon learning of the Underlying Lawsuit, MCS tendered its defense and indemnification to J&S. Doc. 2, ¶ 19; Doc. 2, Exh. 2. J&S responded that it had no liability for the loss. Doc. 2, ¶ 20; Doc. 2, Exh. 4. MCS tendered its defense and indemnification to J&S again. Doc. 2 ¶ 21; Doc. 2, Exh. 4. J&S did not respond. Doc. 2, ¶ 21; Doc. 2, Exh. 4.

MCS filed the instant lawsuit on May 24, 2017 in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. Doc. 2. On June 29, 2017, Defendant removed this action based on diversity jurisdiction.[3] Doc. 1. J&S filed the instant Motion to Dismiss, and MCS responded. Doc. 6; Doc. 16; Doc. 23.

---

[3] Subsequent to the Court's Order to Show Cause as to why this case should not be remanded for lack of diversity jurisdiction (Doc. 7) and J&S' responses to the Order (Doc. 12 and Doc. 22), MCS filed a Motion to Remand based on lack of diversity jurisdiction (Doc. 27). MCS initially attempted to raise the same issue as a "threshold argument" in its Response to J&S' Motion to Dismiss (Doc. 16) and Amended Response to J&S' Motion to Dismiss (Doc. 23). The Court previously addressed subject matter jurisdiction in a separate Order, and found this matter is properly before the Court.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III. DISCUSSION

The Court applies Florida law to this action.[4] J&S argues that each of the five counts in MCS' Complaint fail to state claims upon which relief can be granted. Doc. 6. The Court will address each count in turn below.

1. Negligence

J&S argues that MCS' negligence claim is barred by Florida's economic loss rule because MCS has not alleged a breach of any duty other than those duties created by the Agreement. Doc.

---

[4] The Agreement provides: "13. Dispute Resolution: This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without application of its principles of conflict of law." Doc. 2, Exh. 1, ¶ 13. The parties do not dispute that Florida law applies to this action. *See* Doc. 2, ¶¶ 2, 53; Doc. 6; Doc. 16; Doc. 23.

6. MCS responds that the economic loss rule[5] is inapplicable to the facts of this case because the economic loss rule applies only to products liability claims. Doc. 23. Both parties cite to *Tiara i*n support of their respective positions.

With respect to Count I, the Court finds that Plaintiff's negligence claim is barred under Florida law. To state a valid claim for negligence, MCS must allege that J&S "owed a duty, that [it] breached that duty, and that this breach caused . . . damages" to MCS. *Florida Dept. of Corrs. v. Abril,* 969 So. 2d 201, 204 (Fla. 2007). "However, the alleged duty in [a] tort claim cannot stem from a contractual relationship between the parties." *Certain Underwriters at Lloyd's of London, UK Subscribing to Policy No. B1230AP 56189A14 v. Ocean Walk Resort Condo. Ass'n, Inc.,* Case No. 6:16-cv-258-ORL-37GJK, 2017 WL 3034069 at *10 (M.D. Fla. July 18, 2017). In *Ocean Walk Resort,* this District analyzed the Florida Supreme Court's decision in *Tiara* and subsequent Eleventh Circuit rulings to explain the limitations of the Florida Supreme Court's holding. *Id.* at *10-11, n. 19 (citing *Tiara,* 110 So. 3d at 408-09 (Pariente, J., concurring)); *Lamm v. State St. Bank & Trust,* 749 F. 3d 938, 947 (11th Cir. 2014); *Lookout Mountain Wild Animal Park, Inc. v. Stearns Zoological Rescue & Rehab Ctr., Inc.,* 553 Fed. Appx. 864, 866 (11th Cir. 2014)). While the majority in *Tiara* "definitively limited the application of the economic loss rule to products liability cases", *Ocean Walk Resort,* 2017 WL 3034068 at *10-11, n. 19, *Tiara* did not dismantle general principles of law, including that "in order to bring a valid tort claim, a party must still demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim." *Id.* (quoting *Tiara*, 110 So. 3d at 408 (Pariente, J., concurring)). *See also Southern Wind Aviation, LLC v. Cessna Aircraft Co.,* Case No.

---

[5] "[T]he economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Companies, Inc.,* 110 So. 3d 399, 401 (Fla. 2013).

6:14-cv-1376-ORL-22DAB, 2014 WL 12570958 at *5 (M.D. Fla. July 15, 2014) ("Although the economic loss rule is limited to product liability cases, parties in contractual privity still may not assert causes of action that are otherwise breach-of-contract claims as tort claims."); *Goldson v. KB Home*, Case No. 8:17-cv-340-T-24AEP, 2017 WL 1038065 at *3 (M.D. Fla. March 17, 2017) ("Federal district courts within Florida have cited Justine Pariente's statements to support the contention that in order to bring a valid tort claim, the party must still show that the tort is independent of any breach of contract claim.").

Here, MCS fails to provide any meaningful distinction between its negligence claim in Count I and its breach of contract claim in Count IV. As J&S points out in its Motion to Dismiss, MCS does not allege that J&S owed any duty outside of that created by the Agreement. Doc. 2; Doc. 6. Indeed, in its negligence claim, MCS cites to the Agreement as the basis for the duty owed. Doc. 2, ¶ 25 ("J&S owed MCS a duty of reasonable care to perform property inspection and preservation services in a good and workmanlike manner. See Ex. 1 Section 1(a)."). Given the absence of any allegations of any legal duty independent of the Agreement, the Court finds MCS' negligence claim in Count I fails as a matter of law. It will be dismissed. *See Ocean Walk Resort*, 2017 WL 3034068 at *11 (granting summary judgment in favor of defendant on plaintiff's negligence claim based on plaintiff's failure to show a legal duty independent of the contract). However, the Court will grant MCS leave to amend its negligence claim to the extent that MCS is able to allege facts that J&S owed some separate duty outside of that created by the Agreement.

2. Common Law Indemnity

Common law indemnity "shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing

for which the former is held liable." *Houdaille Indus., Inc. v. Edwards,* 374 So. 2d 490, 493 (Fla. 1979). To state a valid claim for common law indemnity, "the party seeking indemnity must allege in his complaint 1) that he is wholly without fault; 2) that the party from whom he is seeking indemnity is at fault; and 3) that he is liable to the injured party only because he is vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party from whom he is seeking indemnity." *Fla. Farm Bureau Gen. Ins. Co. v. Ins. Co. of N. Am.,* 763 So. 2d 429, 435 (Fla. 5th DCA 2000).

With respect to the element of fault, J&S argues that MCS' common law indemnity claim, Count II, should be dismissed because the complaint in the Underlying Lawsuit alleges that it was MCS, not J&S, that was liable for the loss. J&S relies on *Mendez-Garcia v. Galaxie Corp.,* Case No. 8:10-cv-788, 2011 WL 5358658 (M.D. Fla. Nov. 3, 2011) for the proposition that allegations of wrongdoing against a party precludes that party from seeking common law indemnity from another source. Doc. 6. MCS counters that *Mendez-Garcia* is inapplicable[6] and that a party may be found in breach of contract in an underlying suit without being "at fault" such that the party may still seek common law indemnification from another source. Doc. 23.

The Court finds *Diplomat Properties Ltd. P'ship v. Technoglass, LLC,* 114 So. 3d 357 (Fla. 4th DCA 2013) instructive. In that case, Diplomat, a hotel, contracted with a shower door installer to install glass shower doors in guest rooms. 114 So. 3d at 359. After multiple shower doors broke, Diplomat brought an arbitration proceeding against the installer to recover damages for breach of

---

[6] MCS asserts that *Mendez-Garcia* is inapplicable because it is a products liability action where "strict liability is inured upon [defendant] should any fault be found." Doc. 23. However, the court in *Mendez-Garcia* specifically explained that the underlying action was one for negligence, not products liability. 2011 WL 5358658 at *1, *4, n. 3, *6 ("Mendez-Garcia is suing Galaxie for Galaxie's own negligent acts"; "This is not a scenario in which a seller is seeking indemnification up the chain of sale from a manufacturer in a strict product liability action.").

7

contract. *Id.* The circuit court affirmed the arbitrator's award, and the installer assigned to Diplomat any claims it had against third parties arising from the defects with the shower doors. *Id.* Diplomat, standing in the shoes of the installer, filed a complaint against Technoglass, who had fabricated the shower doors. *Id.* Technoglass argued that Diplomat could not maintain its claim for common law indemnity because the installer had been found liable for breach of contract. *Id.* at 361. The district court of appeal reversed the lower court's dismissal of Diplomat's common law indemnity claim. *Id.* at 363. In holding that Diplomat (as assignee of the installer) could maintain a claim for common law indemnity against Technoglass, the court distinguished between a claim for common law indemnification based on an underlying claim for negligence and a claim for common law indemnification based on an underlying claim for breach of contract. *Id.* at 360-61. The court explained:

> Undoubtedly, the most common factual scenario for an indemnity claim is where the party seeking indemnity was exposed to tort liability through no fault of its own. However, contrary to Technoglass's argument, a party's liability for breach of contract can form the basis for an indemnification claim against a third party.
>
> …
>
> Here, the fact that [the installer] was found liable for breach of contract does not preclude it (or its assignee [Diplomat]) from bringing a common law indemnity claim against Technoglass.
>
> …
>
> [T]he common theme . . . is the need for the party seeking indemnity to be faultless, and the Florida Supreme Court has given no indication that a party's liability for breach of contract precludes a finding of faultlessness. In fact, the common usage of indemnification against manufacturers in products liability cases where a customer sues a retailer for breach of implied warranty, a type of contract claim, suggests that a party may be indemnified for liability arising from a breach of contract.

*Id.* (quoting *Auto-Owners Ins. Co. v. Ace Elec. Serv., Inc.,* 648 F. Supp. 2d 1371, 1379 (M.D. Fla. 2009) (internal quotations omitted). *See also Nucci v. Buchanan Ingersoll & Rooney PC,* 2016 WL

8

5843429 at *3 (M.D. Fla. Oct. 4, 2016) ("In contrast to a tort action, a party may breach a contractual term without being 'at fault,' and may therefore seek indemnification.") (citing *Diplomat Properties,* 114 So. 2d at 361-62).

In the Underlying Lawsuit, Millers alleges claims against MCS for both negligence and breach of contract. Doc. 2, Exh. 2, ¶¶ 27-37. MCS' Complaint in the instant action alleges that MCS is wholly without fault for the claims in the Underlying Lawsuit, that MCS is solely vicarious for J&S's wrongdoing, and that any liability found against MCS in the Underlying Lawsuit is technical, secondary, vicarious, imputed, and/or derivative of the conduct of J&S. Doc. 2, ¶¶ 29-34. These allegations are sufficient to withstand J&S' Motion to Dismiss.[7]

J&S also argues that MCS does not sufficiently allege a "special relationship and/or vicarious liability between MCS and J&S". Doc. 6. Contemporaneous with the elements discussed above, Florida courts have required the existence of a "special relationship" between the parties in order to maintain a claim for common law indemnification. *Diplomat Properties,* 114 So. 3d at 360. However, the term "'special relationship' merely describes a relationship which makes a faultless party only vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party at fault" and a party does not necessarily "need to specifically plead the existence of a 'special relationship' . . . in order to properly state a cause of action for common law indemnity." *Id.* at 362 (quoting *Houdaille,* 374 So. 2d at 492). Besides stating that a special

---

[7] If J&S can prove that MCS was even slightly at fault for the loss, then MCS' common law indemnity claim will fail. *See Diplomat Properties,* 114 So. 3d at 363, n. 2. The parties have not supplemented the record with any filings from the Underlying Lawsuit other than Millers' complaint against MCS, and the Court is limited to the four corners of the Complaint when reviewing a motion to dismiss. Accordingly, it is unknown to the Court at this stage to what extent, if at all, MCS was found at fault for the loss. Absent any evidence of a prior determination of MCS' fault, the only issue before the Court at this stage is whether the allegations in the Complaint, assumed to be true, are sufficient to state a plausible claim for common law indemnity. *See id.*

9

relationship exists between the parties, MCS alleges that J&S did not perform the services it was supposed to and that MCS is only vicariously, derivatively, or technically liable for the claims in the Underlying Lawsuit. Doc. 2, ¶¶ 14-15, 34. The Court is satisfied that MCS has sufficiently pleaded the elements required to state a plausible claim for common law indemnity.

3. Contractual Indemnification

"A contract for indemnity is an agreement by which the promisor agrees to protect the promisee against loss or damages by reason of liability to a third party." *Dade Cnty. School Bd. v. Radio Station WQBA,* 731 So. 2d 638, 643 (Fla. 1999). Contractual indemnity concerns "the express terms of the agreement to indemnify." *Camp, Dresser & McKee, Inc. v. Paul N. Howard Co.,* 853 So. 2d 1072, 1077 (Fla. 5th DCA 2003). It is the terms of the indemnity agreement that "will determine whether the indemnitor is obligated to reimburse the indemnitee for a particular claim." *Id.* "However, contracts that attempt to indemnify a party against its own negligence are disfavored and will only be enforced if the contract clearly and expressly states that the indemnitee's own wrongful acts are indemnified." *Fid. & Guar. Ins. Co. v. Ford Motor Co.,* 707 F. Supp. 2d 1300, 1313 (M.D. Fla. 2010).

J&S contends that MCS' claim for contractual indemnification should be dismissed because the Agreement does not provide that J&S agreed to indemnify MCS for MCS' own conduct. Doc. 6. Indeed, the Agreement does not include language providing that J&S will indemnify MCS for MCS' own wrongdoing:

> **5. INDEMNITY:** Contractor [J&S] agrees to save, defend, indemnify, and hold harmless, MCS . . . from and against any and all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs or expenses of whatever kind (including reasonable attorneys' fees) arising out of or resulting from: (i) any act, omission or negligence by Contractor [J&S], Contractor's [J&S'] agents, employees, representatives, subcontractors, and any and all others acting upon Contractor's [J&S'] behalf (each a "Contractor Indemnifying Party"), (ii) any accident, injury or damage, including bodily injury or death, caused to any Person,

10

or to the property of any Person, where such accident, damage or injury resulted from, or is alleged to have resulted from, any act, omission or negligence of any Contractor Indemnifying Party, (iii) the failure of any Contractor Indemnifying Party to adhere to any applicable Law, (iv) a breach by Contractor of any term of this Agreement . . . .

Doc. 2, Exh. 1, ¶ 5. For its part, MCS contends that it "is not seeking to be indemnified from [MCS'] own negligence". Doc. 23. The allegations in Count III of the Complaint comport with that statement. *See* Doc. 23; Doc. 2, ¶¶ 39-42 ("J&S has a contractual obligation to indemnify MCS for any and all damage caused by its work"; "MCS is without fault for the claims set forth by the plaintiff [in the Underlying Lawsuit] and MCS' liability is solely vicarious for J&S' wrongdoing."). Rather, it appears MCS seeks indemnification only for the losses, damages, or liabilities it allegedly incurred due to J&S' conduct.

J&S does not clearly set forth a basis as to why MCS' claim for contractual indemnity, based on J&S' conduct, should fail. J&S merely raises the fact that the claims in the Underlying Lawsuit allege wrongdoing against MCS, not J&S. Doc. 6. However, the fact that the Underlying Lawsuit alleges wrongdoing against only MCS is not a reason to dismiss MCS' claim for contractual indemnification at this stage. *L.M. Duncan & Sons, Inc. v. City of Clearwater,* 478 So. 2d 816 (Fla. 1985). In *L.M. Duncan,* the City of Clearwater (the "City") hired L.M. Duncan & Sons, Inc. ("L.M. Duncan") to perform construction on City property. *Id.* at 817. An employee of L.M. Duncan sued the City, only, after the employee was injured on the construction site. *Id.* The City filed a third-party complaint against L.M. Duncan, seeking to enforce the indemnity provision of the construction contract. *Id.* L.M. Duncan moved to dismiss the City's third-party complaint on the basis that the City was being sued for negligence. *Id.* The Florida Supreme Court held that the trial court's dismissal of the City's third-party claim for contractual indemnification was

11

premature given that a factual determination of whether the City was solely at fault had not been made. *Id.* at 817-18.

As the Court discussed above, here, the parties have not suggested that a finding of liability or fault has been made in the Underlying Lawsuit. In the absence of any factual determination of liability or fault, MCS' claim for contractual liability survives J&S' Motion to Dismiss. *See id.* at 818.

4. Breach of Contract

To adequately state a claim for breach of contract under Florida law, a party must plead: "(1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F. 3d 913, 914 (11th Cir. 1999). J&S contends that MCS' breach of contract claim should be dismissed because MCS fails to "connect any purported breach to any specific provision in the Agreement" and fails to "identify the provisions purportedly giving rise to" the breach of contract claim. Doc. 6.

J&S cites to three cases to support its argument that MCS does not sufficiently connect the relevant portions of the Agreement with the alleged breaches. However, each of the cases J&S cites are readily distinguishable from the facts here. First, J&S cites to *Herssein Law Group v. Reed Elsevier, Inc.*, 594 Fed. Appx. 606, 608 (11th Cir. 2015) for the general rule that "a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *Id.* However, part of the problem with the breach of contract claim in *Herssein* was that the plaintiff failed to attach the contract to the complaint. *Herssein Law Group v. Reed Elsevier, Inc.*, 2014 WL 11370412 (S.D. Fla. Apr. 16, 2014) aff'd 594 Fed. Appx. at 608. *See also Stallworth v. Omninet Village, L.P.*, 2016 WL 9274926 at *3 (M.D. Fla. July 18, 2016) ("Furthermore, *Herssein* makes it clear that it was a failure to attach the actual contract in

12

addition to a failure to cite to specific language that doomed the claim in question."). Here, there is no dispute that MCS attached the Agreement to the Complaint. Doc. 2, Exh. 1.

J&S also points to *George v. Wells Fargo Bank, N.A.*, 2014 WL 61487 (S.D. Fla. Jan. 8, 2014), where the plaintiff's breach of contract claim was dismissed with leave to amend because the complaint did not "identify which provision" of the contract had been breached. *Id.* at *4. Unlike in *George,* however, MCS identifies multiple provisions in the Agreement which it alleges J&S breached, including the "Nature of Services; Work Orders" provision and "Indemnity" provision. Doc. 2 ¶¶ 16, 18, 48.

Lastly, J&S directs the Court to *Ackner v. PNC Bank, Nat'l Ass'n*, 2017 WL 979529 (S.D. Fla. March 14, 2017). In *Ackner,* the court dismissed the plaintiffs' breach of contract claims with leave to amend because the court was unable to determine which provisions of the contract, attached to the complaint, related to the breaches identified in the complaint. *Id.* at *2. Here, however, MCS has identified the relevant Agreement provisions in the Complaint and connected those relevant provisions to certain alleged breaches. Doc. 2, ¶¶ 16-18, 48-49. For example, MCS cites to language in the Agreement that J&S was required to perform services "in a workmanlike manner" and alleges that J&S breached the Agreement by performing or only partially performing the initial secure and winterization services on January 7, 2014. Doc. 2, ¶¶ 14, 16, 48-49. Accordingly, the Court is able to identify at least some of the contractual provisions which may relate to the alleged breaches.[8] Based on the foregoing, the Court finds J&S' argument that MCS

---

[8] To the extent MCS' breach of contract claim relies on allegations of J&S' conduct prior to the Agreement's effective date of January 1, 2014, MCS may be unable to maintain a claim for breach of contract. MCS alleges that J&S breached the Agreement by, among other things, "[i]ncorrectly and without adequate information and/or evidence, determining that Unit 6 . . . was occupied and that utilities were on." Doc. 2, ¶ 49. However, this particular event allegedly occurred on December 2, 2013, prior to the effective date of the Agreement. Doc. 2, Exh. 1; Doc. 2, ¶ 10. Besides the fact that J&S does not raise this issue in its Motion to Dismiss, other allegations in the Complaint

13

fails to connect the alleged breaches with the Agreement unavailing. Viewing the allegations of the Complaint as true and in a light most favorable to MCS, MCS has sufficiently alleged a plausible claim for breach of contract.

5. Contribution

In Count V, MCS claims J&S is a joint tortfeasor in the Underlying Lawsuit and demands "common-law and statutory contribution, as set forth in Section 768.31 Florida Statutes". Doc. 2, ¶¶ 52-53. J&S argues that MCS cannot state a claim for contribution because MCS' claim against J&S is solely contractual and a claim for contribution requires that the parties be joint tortfeasors. Doc. 6. J&S further contends that J&S cannot be a joint tortfeasor with MCS because the Underlying Lawsuit does not assert any negligence by J&S. Doc. 6.

As an initial matter, under Florida law, contribution is exclusively a statutory remedy. *Florida Patient's Compensation Fund v. St. Paul Fire and Marine Ins. Co.*, 559 So. 2d 195, 197 (Fla. 1990). Thus, MCS fails to state a cause of action under Florida law to the extent that it claims entitlement to "common-law . . . contribution." Doc. 2, ¶ 53.

J&S' argument that MCS cannot state a claim for contribution because MCS' claims against J&S are solely contractual is misplaced. Specifically, J&S argues: "there is no tort claim MCS can assert against J&S pursuant to Florida's economic loss doctrine, and, therefore, statutory contribution is unavailable." Doc. 6. However, the fact that MCS itself may not be able to maintain a separate negligence claim against J&S in this action (as discussed above) is immaterial to whether MCS may claim contribution against J&S for the claims brought against MCS **in the Underlying Lawsuit.** *See Zurich American Ins. Co. v. Hi-Mar Specialty Chemicals, LLC,* Case

---

describe conduct of J&S subsequent to the Agreement's effective date and are sufficient to set forth a plausible claim for breach of contract.

No. 08-80255-civ, 2009 WL 1851124 (S.D. Fla. June 29, 2009) (discussing claim for contribution against third-party defendant in terms of the plaintiff's underlying claims).

Nonetheless, as in *Hi-Mar Specialty Chemicals, LLC,* MCS appears to improperly seek contribution for both the underlying contract claim and tort claim. *Id.* at *4. Section 768.31, Florida Statutes, provides a right of contribution among parties in certain circumstances when "two or more persons become jointly or severally liable **in tort** for the same injury to person or property". Fla. Stat. § 768.31(2)(a) (emphasis added); *Hi-Mar Specialty Chemicals, LLC,* 2009 WL 1851124 at *4 ("Statutory contribution is restricted to tort claims."). Accordingly, MCS cannot maintain a claim for contribution for the breach of contract claim in the Underlying Lawsuit because the breach of contract claim is not a tort claim.

Whether MCS can maintain its contribution claim based on the negligence claim in the Underlying Lawsuit is another question. Since the Florida legislature abolished joint and several liability in negligence actions, claims for statutory contribution have "essentially [been] rendered obsolete" in a Florida negligence cases. *Brown v. Bottling Grp., LLC,* Case No. 8:15-CV-325-T-23TGW, 2016 WL 3883192, at *3 (M.D. Fla. July 18, 2016) (internal quotations and citations omitted). In Florida, "instead of entering judgment based on joint and several liability, a court enters judgment against each party liable on the basis of such party's percentage of fault." *Id.* (internal quotations and citations omitted). Thus, in a Florida negligence claim, because each party can only be liable for its percentage of fault, one cannot seek contribution from another party. *Id.*

Here, however, the negligence claim in the Underlying Lawsuit is likely governed by Pennsylvania law rather than Florida law.[9] Pennsylvania recently abolished joint and several

---

[9] The Underlying Lawsuit was initiated in the Court of Common Pleas, Adams County, Pennsylvania. Under Count II, Breach of Contract, Millers alleges that Nation Star and MCS entered into a contract. However, Millers alleges it is not in possession of that contract and, as far

15

liability in certain tort cases and replaced the doctrine with comparative fault. *Roverano v. John Crane, Inc.,* 2017 WL 6761077 at *9 (Pa. Dec. 28, 2017). However, in Pennsylvania, a party who is liable for 60 percent or more of the total liability may still be held jointly and severally liable. *Id.; Juarez v. Friess,* 2016 WL 406252 at *11 (W.D. Pa. Feb. 3, 2016). As the court in *Juarez* explained:

> [I]f a defendant is less than sixty percent liable for the plaintiff's injury, that defendant is subject only to several liability for his proportionate share of the total liability. A defendant found to be at least sixty percent liable is subjected to joint and several liability and may seek contribution from other tortfeasors after discharging more than his proportionate share of the total liability.

*Id.* Accordingly, whether MCS can seek contribution from J&S for the negligence claim in the Underlying Lawsuit is dependent on the ultimate percentage of fault, if any, that is apportioned to MCS, and what amount, if any, MCS paid. Again, because the Court is without information regarding the current disposition of the Underlying Lawsuit, the Court does not determine at this stage whether MCS may seek contribution from J&S as a matter of law on the negligence claim in the Underlying Lawsuit.

J&S' argument that J&S cannot be a joint tortfeasor with MCS because the Underlying Lawsuit does not assert any negligence by J&S is unavailing. Essentially, J&S argues MCS cannot maintain its claim for contribution in the instant case because MCS did not implead J&S in the Underlying Lawsuit. MCS argues it did not implead J&S because "any disputes relating to the Agreement are expressly required to be brought in Hillsboro[ugh] County, Florida, which MCS has done by way of initiating this action." J&S does not cite any case law in support of its argument

---

as the Court can tell, no contract was attached to the complaint in the Underlying Lawsuit. Millers does not allege where the contract was entered into. Accordingly, the Court is unable to address what law a Pennsylvania Court would apply either pursuant to the parties' contract or Pennsylvania's choice of law rules.

that MCS cannot maintain its claim for contribution in this separate action. Indeed, Florida courts have acknowledged that a party may bring a contribution claim in an action separate from the underlying action. *Claudio v. Regalado,* 116 So. 3d 451, 456-57 (Fla. 2d DCA 2013).

J&S' arguments fail to persuade the Court. However, MCS does not specify in its claim for contribution which claims in the Underlying Lawsuit it seeks contribution for. Accordingly, the Court will dismiss MCS' claim for statutory contribution, with leave to amend, to specify for which of the claims in the Underlying Lawsuit it seeks contribution and on what basis.

## IV. J&S' CLAIM FOR ATTORNEYS' FEES AND COSTS

J&S claims entitlement to attorneys' fees and costs "given that MCS' claims are subject to dismissal." Doc. 6. In addition, J&S claims attorneys' fees and costs incurred "by MCS' improper attempt to joint J&S in the Pennsylvania action." Doc. 6. MCS does not address J&S' claim for attorneys' fees in either of its responses. *See* Doc. 16; Doc. 23.

As an initial matter, it is not clear to the Court on what basis J&S is claiming attorneys' fees and costs incurred "by MCS' improper attempt to join J&S in the Pennsylvania action." Doc. 6. J&S does not explain whether it is referring to an attempt by MCS to join J&S in the Underlying Lawsuit in the Court of Common Pleas, Adams County, Pennsylvania,[10] or whether J&S is simply referring to MCS bringing the instant action in this Court.

With respect to a claim by J&S' for attorneys' fees for defending the instant action, the general rule is that "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 253 (2010) (internal quotations omitted). Here, the Agreement provides that "[t]he prevailing party in any dispute

---

[10] There is no other information in the four corners of the Complaint or the parties' submissions on the Motion to Dismiss to suggest that MCS attempted to join J&S in the Underlying Lawsuit in the Pennsylvania court.

arising out of or related to this Agreement, shall be entitled to recover all costs incurred in connection therewith, including, without limitation, mediation, arbitration, administrative, appellate or Bankruptcy proceedings." Doc. 2, Exh. 1, ¶ 13. "Under settled Florida law . . . a prevailing party is the one who succeeds 'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Sanchez v. Swire Pacific Holdings, Inc.*, Case No. 09-20235-civ, 2009 WL 2005272 *3 (S.D. Fla. July 9, 2009) (quoting *Moritz v. Hoyt Enter., Inc.,* 604 So.2d 807, 810 (Fla.1992)).

J&S' claim for attorneys' fees is premature. Whether J&S is a "prevailing" party with respect to its Motion to Dismiss cannot be determined where a plaintiff has been given leave to amend and the time to amend has not expired.[11] *See Dependable Component Supply, Inc. v. Carefour Informatique Tremblant, Inc.,* 572 Fed. Appx. 796 (11th Cir. 2014) (granting the defendant's motion for attorneys' fees after plaintiff's motion was dismissed without prejudice and plaintiff failed to amend within time granted and did not request an extension of time); *Larkon Grp. Serv., LLC v. Boardwalk Regency Corp.,* Case No. 13-cv-80149-RYSKAMP, 2014 WL 12603177 at *1 (S.D. Fla. June 23, 2014) (denying the defendant's motion for attorneys' fees where plaintiff amended its complaint after it was partially dismissed without prejudice).

Accordingly, it is

**ORDERED**:

1. Defendant's Motion to Dismiss (Doc. 6) is **GRANTED in part** and **DENIED in part.**

---

[11] If J&S ultimately "prevails" at some later stage, J&S "may then be able to recover for the fees incurred to date as well as any other fees incurred at arriving at that successful conclusion." *Swire Pacific Holdings, Inc.,* 2009 WL 2005272 at *4.

2. Counts I and V of Plaintiff's Complaint (Doc. 2) are dismissed without prejudice. Plaintiff is granted leave to file an Amended Complaint, which cures the deficiencies addressed in this Order, **within FOURTEEN (14) DAYS** from the date of this Order. If no amended complaint is filed within the time permitted, this case will proceed on Counts II, III, and IV of the Complaint.

**DONE AND ORDERED** in Tampa, Florida on July 2, 2018.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any